**Deborah WEATHERHOLT, Plaintiff,**

**v.**

**MEIJER INC., Kim Debottis, Jason Holdaway, David Berger, Pamela Herrera and Jennifer Sinclair, Jointly and Severally, Defendants.**

**Civil Action No. 96–40012.**

United States District Court,
E.D. Michigan,
Southern Division.

April 4, 1996.

Jeffrey S. Rueble, Meijer Inc., Grand Rapids, MI, for defendants.

Dana K. Wade, Royal Oak, MI, for Deborah Weatherholt.

*ORDER GRANTING IN PART PLAINTIFF'S MOTION TO REMAND AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

This matter is before this court on the plaintiff's motion to remand this action to the Monroe County Circuit Court and on the defendants' subsequent motion for summary judgment. The central dispute presented in these motions is whether the claims asserted in the plaintiff's November 13, 1995 complaint are preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* ("LMRA"). This court has reviewed the submissions of the parties and finds that they adequately present the factual and legal issues involved in this matter. Accordingly, this court will determine these motions without oral argument pursuant to Local Rule 7.1(e)(2) (E.D.Mich., Jan. 1, 1992).

**I. Factual Background**

At the end of her shift on November 13, 1993, the plaintiff, Deborah Weatherholt, an hourly employee of the defendant Meijer, Inc. ("Meijer"), was detained by two Meijer security personnel and taken to the loss prevention office for an interview. These store detectives, defendants Pamela Herrera and Jennifer Sinclair, summoned Weatherholt to the loss prevention office because they had observed the plaintiff select a pair non-prescription eyeglasses from a display, use them during her shift and attempt to leave the store without paying for them. Weatherholt agreed to accompany Herrera and Sinclair to the loss prevention office and was interviewed for approximately 2 hours and 45 minutes. At the conclusion of the interview, Weatherholt was suspended from employment by the manager in charge of the store at that time, defendant Jason Holdaway. Meijer subsequently terminated Weatherholt for theft on November 13, 1993.

On November 20, 1993, Weatherholt filed a grievance over her discharge, asserting a violation of Article 5.8 (the just cause termination provision) of the collective bargaining agreement ("CBA") between Meijer and Weatherholt's union, the United Food and Commercial Workers International Union, AFL–CIO, CLC ("Union"). In compliance with the established grievance procedure, the parties conducted a grievance meeting on February 15, 1994. At that meeting, Meijer denied the grievance. The grievance was discontinued as of May 17, 1994, pursuant to section 5.10 of the CBA, as no request for arbitration had been made by the Union within the ninety day period prescribed in that section.

Eighteen months later, on November 13, 1995, Weatherholt filed a complaint in the Monroe County Circuit Court against Meijer, the store detectives who observed the theft (Herrera and Sinclair), the loss prevention manager, Kim Debottis, the manager who suspended her (Holdaway) and the store director, David Berger, who informed her of her termination. That complaint contained five counts alleging false imprisonment, intentional infliction of emotional distress, negligent hiring and supervision by defendant Meijer, tortious interference with contractual relations and respondeat superior.

The defendants timely removed this action on the grounds that the state law tort claims asserted in Weatherholt's complaint were preempted under Section 301 of the LMRA, 29 U.S.C. § 185. On February 5, 1996, Weatherholt filed the present motion to remand this action to the Monroe County Circuit Court, contending that these state law claims are not preempted by the LMRA because they are neither founded directly upon rights created in the CBA nor substantially dependent upon an analysis of that agreement. The defendants maintain that these claims are preempted by the LMRA because proof of these claims requires interpretation of the CBA. Because the provisions of the LMRA control, the defendants further assert, summary judgment is appropriate based upon Weatherholt's undisputed failure to comply with the six month statute of limitations governing LMRA actions.

## II. Preemption under the LMRA

Section 301 of the LMRA, which preempts any state law claims that require analysis of a collective bargaining agreement, provides in relevant part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court having jurisdiction of the parties.... 29 U.S.C. § 185(a).

■ In order to ensure uniformity and predictability in interpreting the meaning of collective bargaining agreements, the Supreme Court has concluded that state law "does not exist as an independent source of private rights to enforce collective bargaining contracts." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). Accordingly, a claim brought in state court alleging a violation of a provision of a labor contract must be brought under section 301 and resolved by reference to federal law. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985) ("in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.") (citing *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)).

■ Notwithstanding the need for uniformity, the Court has recognized that not every dispute relating to employment, or tangentially involving a provision of a collective bargaining agreement, is preempted by section 301. *Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911. As the Court stated in *Lingle v. Norge Div. of Magic Chef, Inc.:*

§ 301 pre-emption ... says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements.... [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes. 486 U.S. 399, 409–10, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988).

Therefore, state law claims involving labor-management relations may escape the preemptive reach of section 301 only if such claims do not require a court to construe the terms of a collective bargaining agreement. *Id.* at 411, 108 S.Ct. at 1884.

■ Consistent with the standard articulated by the Supreme Court, the Sixth Circuit as developed a two-step inquiry for analyzing section 301 preemption questions. To determine whether a state law claim is preempted by section 301, this court must ascertain: (1) whether proof of the state law claim requires interpretation of the collective

bargaining agreement, and (2) whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law. *DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994); *Terwilliger v. Greyhound Lines, Inc.,* 882 F.2d 1033, 1037 (6th Cir.1989). Only if the right derives from state law and does not require contract interpretation does the state law claim escape preemption under section 301. *DeCoe,* 32 F.3d at 216.

### III. Discussion

■■ To determine whether a state law claim substantially implicates the terms of a collective bargaining agreement, this court must examine the elements of the asserted causes of action under Michigan law. In making this determination, this court is not bound by the "well pleaded complaint" rule. *Terwilliger,* 882 F.2d at 1037. This court must look, instead, to the essence of the plaintiff's complaint to determine whether the plaintiff is attempting to disguise what is essentially a contract claim as a tort. *DeCoe,* 32 F.3d at 216. To the extent that the plaintiff can prove all of the elements of her claim without the need for contract interpretation, her claims are independent of the collective bargaining agreement and are not preempted. Moreover, the mere fact that the defendants rely on a term of the collective bargaining agreement as an affirmative defense to a state law claim will not transform an otherwise independent claim into a claim dependent upon that agreement. *Fox v. Parker Hannifin Corp.,* 914 F.2d 795, 800 (6th Cir.1990). In light of these principles, this court will review seriatim the various state law claims asserted in Weatherholt's November 13, 1995 complaint to determine whether their resolution requires interpretation of the CBA between Meijer and the Union.

### A. False Imprisonment

■■ Count I of Weatherholt's complaint asserts a claim of false imprisonment against defendants Herrera and Sinclair, based upon their involvement in the November 13, 1993 loss prevention interview. Weatherholt alleges that these defendants unlawfully re-strained her for approximately 2 hours and 45 minutes and "intimidated, harassed, and falsely accused [her] of stealing a pair of eyeglasses from Meijer, when in fact she had actually purchased them from another retail establishment." Review of the applicable authorities and the nature of Weatherholt's false imprisonment claim demonstrates that resolution of this allegation does not require interpretation of the CBA.

■■ Under Michigan law, a plaintiff alleging false imprisonment must prove that she was imprisoned or restrained of her liberty and that this restraint was unlawful, i.e. without probable cause. *Tope v. Howe,* 179 Mich.App. 91, 105, 445 N.W.2d 452 (1989); *compare Tumbarella v. The Kroger Co.,* 85 Mich.App. 482, 491, 271 N.W.2d 284 (1978). Once the plaintiff makes this basic showing, a presumption arises that she was unlawfully imprisoned, and the defendants who committed the acts must demonstrate that their actions were legally justified. *Tumbarella,* 85 Mich.App. at 490, 271 N.W.2d 284. In this regard, section 600.2917 of the Michigan Compiled Laws provides a partial statutory privilege to merchants who detain individuals under suspicion of unlawfully removing property of the store. M.C.L.A. § 600.2917. That privilege attaches where the merchant has reasonable cause to suspect the person of stealing. *Tumbarella,* 85 Mich.App. at 491, 271 N.W.2d 284.

In their response to Weatherholt's motion to remand, the defendants assert that, to prove her false imprisonment claim, Weatherholt has the burden to show that the defendants lacked probable cause to justify the alleged imprisonment. The question of probable cause, the defendants contend, cannot be answered without reference to the CBA and the company policies and procedures governing apprehension, detention and interrogation of employees suspected of theft, which are incorporated therein. This court is not convinced.

Initially, this court notes that the defendants have failed to proffer any evidence of a specific provision of the CBA or company policy which is directly implicated by Weatherholt's false imprisonment claim. Indeed, the absence of any specific evidence in this

regard, distinguishes this case from the authorities cited by the defendants in support of preemption. *See Blanchard v. Simpson Plainwell Paper Co.*, 1995 U.S. Dist. LEXIS 5830 (W.D.Mich.1995) (concluding that the employer's right to direct the workforce included the right to confront an employee with allegations of misconduct based upon illegal drug use, because such drug use was specifically proscribed by the collective bargaining agreement). Moreover, Weatherholt's claim for false arrest under Michigan law is a classic example of a tort claim based upon "non-negotiable" state law rights independent of rights established between the parties by the CBA. *See Lueck*, 471 U.S. at 213, 105 S.Ct. at 1912. The right to be free from arrest or imprisonment unsupported by probable cause and the factors defining the scope of this right derive from an independent body of state law, not from the CBA between Meijer and the Union. *Dobiecki v. Palacios*, 829 F.Supp. 229, 234 (N.D.Ill.1993) ("The probable cause standard under state law has its own meaning independent of the just cause standard of the collective bargaining agreement."); *see Mathis v. Boeing Co.*, 684 F.Supp. 641, 645 (W.D.Wash.1987) (concluding that section 301 did not preempt a claim for false imprisonment because the collective bargaining agreement did not "give Boeing the right to forcibly detain employees for substantial periods of time against their will," even though that agreement expressly recognized Boeing's right to conduct security interviews). Although resolution of this state law claim may require consideration of the same factual issues as a federal labor claim, that alone does not provide a basis for holding that the state law claim is preempted. *Lingle*, 486 U.S. at 410, 108 S.Ct. at 1883. The false imprisonment claim asserted in Count I of Weatherholt's November 13, 1995 complaint is not preempted by section 301 of the LMRA. Accordingly, Weatherholt's motion to remand that claim to the Monroe County Circuit Court will be granted.

## B. Intentional Infliction of Emotional Distress

 Count II of Weatherholt's complaint alleges that the "extreme and outrageous conduct" of defendants Herrera and Sinclair caused her to suffer emotional distress. The Sixth Circuit has held that claims for intentional infliction of emotional distress are preempted "when the alleged outrageous conduct was governed by CBA provisions." *DeCoe*, 32 F.3d at 219. To be certain, a majority of the cases addressing this issue have concluded that preemption is proper, because the question of whether the defendants' conduct was outrageous depends upon whether the defendants' actions contravened the collective bargaining agreement. *DeCoe*, 32 F.3d at 219; *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531 (4th Cir. 1991); *Douglas v. American Info. Technologies Corp.*, 877 F.2d 565 (7th Cir.1989); *Newberry v. Pacific Racing Ass'n.*, 854 F.2d 1142, 1148–49 (9th Cir.1988); *Morris v. Ambassador Nursing Home, Inc.*, 845 F.Supp. 1164, 1168 (E.D.Mich.1994); *Crawford v. TRW, Inc.*, 815 F.Supp. 1028, 1035 (E.D.Mich.1993). These cases have based their analysis on section 46 of the Restatement (Second) of Torts, which provides that a defendant does not act outrageously where he has done no more than "insist upon his legal rights in a permissible way, even though he was well aware that such insistence [wa]s certain to cause emotional distress." Restatement (2d) of Torts § 46, comment g (1965). Michigan law incorporates this notion of a privilege and requires a plaintiff to prove that a defendant's conduct was "extreme and outrageous." *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 602–03, 374 N.W.2d 905 (1985) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Accordingly, this court must determine whether evaluating Weatherholt's claims of outrageous conduct requires interpretation of the CBA.

Review of the applicable authorities clearly demonstrates that Weatherholt's emotional distress claim is preempted. In *DeCoe*, the Sixth Circuit held that section 301 preempted a claim for intentional infliction of emotional distress based upon the defendants' dissemination of allegedly false sexual harassment

charges. The court concluded that, pursuant to the standard articulated in the Restatement (2d), it was necessary to refer to the collective bargaining agreement to determine whether the defendants acted outrageously or whether they were merely pursuing their rights in a permissible way. *DeCoe*, 32 F.3d at 220.

Similarly, in *Morris*, this court held that claims for intentional infliction of emotional distress are preempted because evaluating the outrageousness of an employer's conduct involves an interpretation of the collective bargaining agreement. *Morris*, 845 F.Supp. at 1168. In reaching that conclusion, this court relied upon the reasoning in *Miller v. AT & T Network Systems*, 850 F.2d 543, 550–51 (9th Cir.1988), which is instructive here. In *Miller*, the court noted that, in order to establish intentional infliction of emotional distress under Oregon law, a plaintiff was required to demonstrate that the defendant's conduct extended "beyond the farthest reaches of socially tolerable behavior." *Id.* at 551. Evaluating whether the emotional distress claim was preempted under section 301, the court concluded that the "farthest reaches of socially tolerable behavior" standard was "not an independent, non-negotiable standard of behavior." *Id.* To the contrary, the court reasoned, the measure of socially tolerable behavior in any given situation ultimately depends upon the relationship between a particular plaintiff and defendant. Because the relationship between the plaintiff and defendants in *Miller* was defined by a collective bargaining agreement, the questions of reasonableness raised by the plaintiff's emotional distress claim could be resolved only by consideration of the terms of that agreement. Accordingly, the claim was preempted under section 301.

■ This court finds that resolution of Weatherholt's claim of emotional distress is preempted because proof of an essential element of that claim requires interpretation of the CBA. *DeCoe*, 32 F.3d at 220; *Morris*, 845 F.Supp. at 1168; *Crawford*, 815 F.Supp. at 1035. Specifically, the question of whether the defendants' actions in detaining and interviewing Weatherholt about the theft constituted extreme or outrageous conduct cannot be resolved without reference to the defendants' rights under the CBA and the company procedures incorporated therein. Count II of Weatherholt's complaint is preempted under section 301.

## C. Negligent Hiring and Supervision

■ In Count III of her complaint, Weatherholt asserts a claim against Meijer for negligent hiring and supervision. Weatherholt alleges that Meijer had a duty to hire and supervise its employees to ensure that they would treat her in a fair and reasonable manner.

Count III is preempted by section 301 because the duties and rights forming the basis of this claim are created by the CBA and proof of this claim would require this court to interpret the CBA. This court's holding in *Morris* is particularly applicable to this claim. In *Morris*, this court noted that a plaintiff in a negligent hiring and supervision claim had the burden of establishing that the defendant had a duty or obligation to the plaintiff. *Morris*, 845 F.Supp. at 1167. Because any duty relating to the hiring, supervision or retention of employees in the collective bargaining context would arise solely from the collective bargaining agreement, resolution of these types of claims would require interpretation of that agreement. In this case, resolution of Weatherholt's claims for negligent hiring and supervision would require this court to interpret the CBA. Accordingly, Count III is preempted under section 301 of the LMRA.

## D. Tortious Interference with Contractual Relations

Count IV of Weatherholt's complaint asserts a claim for tortious interference with contractual relations against defendants Herrera, Sinclair, Debottis and Holdaway. Weatherholt alleges in Count IV that these defendants' false and unjustified accusations of theft caused her to be discharged from her just cause employment contract with Meijer. In her motion for remand, Weatherholt submits that this claim is not preempted by section 301 because Count IV "does not allege breach of contract." The basis for this tortious interference claim, Weatherholt rea-

sons, is the tortious conduct which resulted in termination and not the termination itself. Accordingly, she concludes, this court does not need to interpret the just cause provision of the CBA to resolve this claim.

■■■■■ Even a cursory review of Weatherholt's complaint and the applicable authorities reveals that Count IV is preempted by section 301, because proof of that claim would require interpretation of the CBA. The Sixth Circuit has consistently held that section 301 preempts a state law claim of tortious interference with contractual relations where a breach of the contract is a necessary element of the tortious interference claim. *DeCoe*, 32 F.3d at 218; *Fox*, 914 F.2d at 800. In Michigan, the law is clear that a breach of contract is a necessary element of any tortious interference claim. *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich.App. 300, 312, 486 N.W.2d 351 (1992); *Northern Plumbing & Heating, Inc. v. Henderson Brothers, Inc.*, 83 Mich.App. 84, 93, 268 N.W.2d 296 (1978). Accordingly, resolution of any claim of tortious interference with contractual relations will require this court to interpret the just cause employment provision contained in Article 5.8 of the CBA. *See DeCoe*, 32 F.3d at 218; *Morris*, 845 F.Supp. at 1167. The tortious interference claim asserted in Count IV of Weatherholt's complaint is preempted by section 301 of the LMRA.

## E. Respondeat Superior

■■■■■ Count V of Weatherholt's complaint is entitled "Respondeat Superior" and seeks to hold defendant Meijer liable for the unlawful acts allegedly committed by the individual defendants in the other four counts of the complaint. Under Michigan law, an employer may be held liable for the intentional or negligent torts of its employees only if the tort is committed in the course of and within the scope of employment. *Arbour v. Jenkins*, 903 F.2d 416 (6th Cir.1990); *Green v. Shell Oil Co.*, 181 Mich.App. 439, 450 N.W.2d 50 (1989); *Gifford v. Evans*, 35 Mich. App. 559, 192 N.W.2d 525 (1971). Thus, irrespective of the underlying tort, the application of theory of respondeat superior requires that this court analyze the relationship between the employer and the alleged employee tortfeasor, which is defined by a collective bargaining agreement. Accordingly, the claim based upon the theory of respondeat superior asserted in Count V Weatherholt's complaint is preempted under section 301, because resolution of that claim will necessarily require interpretation of the CBA.

## IV. Summary Judgment

The defendants have moved for summary judgment as to all claims preempted under section 301, on the grounds that these claims are barred by the applicable statute of limitations. The Supreme Court has held that section 301 actions brought by individual employees are governed by the six-month statute of limitations applied in actions under section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169–71, 103 S.Ct. 2281, 2293–94, 76 L.Ed.2d 476 (1983). The Sixth Circuit has held that this limitations period governs state law claims which are preempted by section 301. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 803 (6th Cir.1990). Accordingly, any of the preempted claims which were filed after the expiry of six-month period of limitations must be dismissed.

In *Robinson v. Central Brass Mfg. Co.*, 987 F.2d 1235 (6th Cir.1993), the Sixth Circuit addressed the issue of when a cause of action under section 301 accrues. The court reiterated the general principle that a claim accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Id.* at 1239. Analyzing the multifactor tests articulated in *Clayton v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) and *Frandsen v. Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees*, 782 F.2d 674 (7th Cir.1986), the court concluded that, where a plaintiff avails herself of a grievance procedure pursuant to a collective bargaining agreement, the district court may, in its discretion, toll the

statute of limitations until the conclusion of that grievance procedure. *Robinson,* 987 F.2d at 1243. The court further concluded that, where a union does not request arbitration of a denial of a grievance, and where arbitration is the only remaining private dispute mechanism available to the plaintiff, the limitations period begins to run from the time the union chooses not to pursue arbitration. *Id.*

▮ From the record in this case, it is clear that the six-month limitations period commenced, at the latest, on May 17, 1994, the day after the ninety day time period expired for the Union to select arbitration under the CBA. Weatherholt had until November 17, 1994 to file any claims against the defendants based upon these events. Weatherholt does not dispute that she filed her action on November 13, 1995, nearly one year beyond the expiration of the limitations period. Weatherholt's only argument against this summary judgment motion is that the six-month limitations period does not apply because these claims are not preempted under section 301. Because there is no question of material fact that any preempted claim would be barred by the applicable limitations period, all of the preempted claims contained in Weatherholt's complaint are time barred and must be dismissed. Accordingly, Counts II, III, IV and V of Weatherholt's complaint are dismissed.

### ORDER

Therefore, it is hereby **ORDERED** that the plaintiff's motion for remand is **GRANTED** as to Count I of the November 13, 1995 complaint and **DENIED** as to Counts II, III, IV and V.

**IT IS FURTHER ORDERED** that Count I of the plaintiff's November 13, 1995 complaint is **REMANDED** to the Circuit Court for the County of Monroe, Michigan.

**IT IS FURTHER ORDERED** that Counts II, III, IV and V are **DISMISSED,** as they are barred by the applicable statute of limitations.

**SO ORDERED.**

### *PARTIAL JUDGMENT*

This matter came before this court on defendant's motion for summary judgment, the Honorable Paul V. Gadola, presiding, and the issues having been duly reviewed and a decision having been rendered,

**IT IS ORDERED AND ADJUDGED** that the plaintiff, Deborah Weatherholt, take nothing against the defendants on Counts II, III, IV and V of her November 13, 1995 complaint and that those counts be **DISMISSED** as untimely filed. Count I of that complaint is **REMANDED** to the Circuit Court for the County of Monroe, Michigan, this court being without subject matter jurisdiction over the claims asserted therein.

**IT IS FURTHER ORDERED** that the clerk serve a copy of this judgment by United States mail on the counsel for the plaintiff and on counsel for the defendant.

Dated at Flint, Michigan, this 3rd day of April, 1996.