**Jeffrey GOINS, Plaintiff,**

v.

**AJAX METAL PROCESSING, INC. and Kenneth Poucket, Defendants.**

No. CIV.A. 97–40241.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 3, 1997.

David l. Ravid, James M. Brady, Ravid Assoc., Southfield, MI, for Plaintiff.

Robert W. Morgan, Kay R. Butler, Clark Hill, Detroit, MI, for Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On or about May 29, 1997, plaintiff Jeffrey Goins filed the instant three-count action in Wayne County Circuit Court after being discharged from his employment with defendant Ajax Metal Processing, Inc. ("Ajax") on January 12, 1996. In Counts I and II, plaintiff sets forth Toussaint-type[1] wrongful discharge claims against Ajax, his previous employer, and Kenneth Poucket, the individual who allegedly fired him.[2] In Count VI[sic], plaintiff brings a claim for interference "with business and/or contractual relations" against Poucket only.

1. *See Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980).

2. Poucket is a Plant Manager of Ajax's Plating Division.

On or about July 1, 1997, defendants removed the case to this court pursuant to 28 U.S.C. § 1441(b). In their petition for removal defendants asserted that this court had original subject-matter jurisdiction over all three of plaintiff's purportedly state law claims because each claim was pre-empted by § 301 of the National Labor Relations Act, 29 U.S.C. § 152(5).

Presently before this court is defendants' motion to dismiss or in the alternative, for summary judgment on all claims in plaintiff's complaint. For the following reasons, defendants' motion will be granted in part and denied in part.

## FACTS

On or about August 8, 1995, Ajax hired plaintiff as a "Plating Line Operator." Approximately seven months later, on January 12, 1996, plaintiff received an "Employee Warning/Disciplinary Notice"[3] ("Notice") terminating him from his employment at Ajax for carrying a weapon on plant property—a violation of a written work rule proscribing the "[u]nauthorized possession of firearms, knives, or other weapons on company property."

After plaintiff received the Notice, he telephoned Gregory Wronkowicz, Ajax's Vice-President of Operations, and requested a meeting to discuss his termination. A meeting was convened on January 17, 1996.[4] At the meeting, plaintiff denied he had a weapon on company property and verbally requested that he be reinstated. His request for reinstatement was denied.

After the January 17, 1996 meeting, plaintiff, who at all relevant times was a member of a bargaining unit represented by the Ajax Metal Processing Employees Committee ("Committee"), allegedly presented the Committee Chairperson, Dan Vanderplancke, with a written grievance concerning his dis-

3. The Notice was prepared by defendant Poucket, at the behest of Gregory Wronkowicz ("Wronkowicz"), Ajax's Vice-President of Operations.

4. Present at the meeting were plaintiff, Wronkowicz, and Rodney D. Burgess, General Manager of Ajax's Plating Division and plaintiff's immediate supervisor.

charge. Plaintiff allegedly requested that Vanderplancke process his grievance in accordance with the procedure delineated in the collective bargaining agreement, (hereinafter the "Management/Labor Agreement").[5] Vanderplancke, however, allegedly refused to process plaintiff's grievance.

Ultimately, on May 29, 1997, plaintiff filed the instant lawsuit seeking monetary damages from Ajax and Poucket for the alleged wrongful termination of his employment with Ajax. Shortly thereafter, defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

## *ANALYSIS*

### *I. Legal Standards*

#### *A. Motion to Dismiss—Federal Rule of Civil Procedure 12(b)(6)*

■ Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any claim which fails to "state a claim upon which relief can be granted." Rule 12(b)(6) affords defendants an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief on its claims, even if everything alleged in the counterclaims is true. In applying the standards under Rule 12(b)(6), the court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). The court need not, however, accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if they are couched as factual allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 629 (9th Cir. 1981); *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978); *Sexton v. Barry,* 233 F.2d 220, 223 (6th Cir.1956). Dismissal for failure to state a claim is disfavored:

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

#### *B. Motion for Summary Judgment—Federal Rule of Civil Procedure 56(c)*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.,* 25 F.3d 1320, 1323 (6th Cir.1994) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that

---

**5.** Actually, the committee had negotiated a series of Management/Labor Agreements. The Management/Labor Agreement in effect at the time of

Goins' discharge was dated June 1, 1993 through May 31, 1996.

there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir. 1994).

With these two standards in mind, this court will consider defendants' motion as a summary judgment motion since matters outside the pleadings will be taken into account.

## II. Whether Ajax and Poucket Are Entitled to Summary Judgment on Count I

In Count I of his complaint, plaintiff alleges that pursuant to the terms of the Management/Labor Agreement, Ajax employees, such as himself, could be terminated only for "just cause." Plaintiff maintains that Ajax and Poucket terminated him without "just cause" and in breach of the Management/Labor Agreement when they fired him for something he allegedly did not do (i.e., possessed a gun on Ajax property). *See Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 579, 598, 292 N.W.2d 880 (1980) (holding that a "just cause" provision may become part of an employment contract either by "express agreement, oral or writ-

ten, or as a result of an employee's legitimate expectations grounded in an employer's policy statements").

Defendants maintain that they are entitled to summary judgment on Count I of plaintiff's complaint. Defendants contend that plaintiff is time-barred from bringing Count I and they also argue that plaintiff did not exhaust the collective bargaining agreement's exclusive contractual remedies prior to bringing said Count.

A preliminary issue to be decided is whether Count I of plaintiff's complaint is pre-empted by § 301 of the Labor–Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. If Count I is not pre-empted, this court lacks jurisdiction over it.

### A. Count I Is Pre-empted by § 301

 The Supreme Court has held that if a claim is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," it is pre-empted by § 301 of the LMRA. *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987). Section 301 provides:

> Suits for violation of **contract between an employer and a labor organization** representing employees in an industry affecting commerce as defined in this Act, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

(emphasis added).[6]

It is plaintiff's position that Count I is not pre-empted by § 301 [7] because the Commit-

---

**6.** "Consistent with the standard articulated by the Supreme Court, the Sixth Circuit has developed a two-step inquiry for analyzing § 301 pre-emption questions. To determine whether a state law claim is pre-empted by § 301, this court must ascertain: (1) whether proof of the state law claim requires interpretation of the collective bargaining agreement, and (2) whether the right claimed by the plaintiff is created by the collective-bargaining agreement or by state law." *Weatherholt v. Meijer, Inc.*, 922 F.Supp. 1227, 1230–31 (E.D.Mich.1996) (citing *DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir.1994),

*Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir.1989)).

**7.** In their petition for removal, defendants asserted that this court has jurisdiction over all plaintiff's purportedly state-law claims because such claims were pre-empted by § 301. Plaintiff seemingly concurred in this assertion because he did not file a motion to remand. Indeed, it was not until plaintiff filed his response to defendants' instant motion that it became clear he did not understand his claims to be pre-empted.

**1062**

tee which negotiated the Management/Labor Agreement upon which Count I is predicated, is not a "labor organization" within the meaning of § 2(5) of the National Labor Relations Act ("NLRA"), as amended 29 U.S.C. § 152(5).[8] More specifically, plaintiff contends that the Committee is not a "labor organization" under § 2(5) because it "existed only on paper," "do[es] not collect dues" and because it does not have "assets or [an] identity of [its] own." Plaintiff infers that only an "international, professional union" meets the statutory requirements of a "labor organization" under § 2(5).

■ Plaintiff cites absolutely no legal authority to substantiate his argument that only an international professional union with assets and a formal structures qualifies as a "labor organization" under § 2(5). In fact, it is well-established that an employee committee lacking funding and structure nevertheless can qualify as a "labor organization" under § 2(5). For instance, in the case of *NLRB v. Cabot Carbon Company*, 360 U.S. 203, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959), the Supreme Court found that an employee committee which had no membership requirements, collected no dues, had no funds, and did not engage in collective bargaining was nevertheless a "labor organization within § 2(5) of the NLRA." Furthermore, in *Electromation, Inc.*, the National Labor Relations Boards' seminal decision concerning employee committees, the Board stated:

> Under the statutory definition set forth in Section 2(5), the organization at issue in a labor organization if (1) employees participate, (2) the organization exists, at least in part, for the purpose of "dealing with" employers, and (3) these dealings concern "conditions of work" or concern other statutory subjects, such as grievances, labor disputes, wages, rates of pay, or hours of employment. Further, if such organization has a purpose the representation of employees, it meets the statutory defini-

tion of "employee representation committee or plan" under Section 2(5) and will constitute a labor organization if it also meets criteria of employee participation and dealing with conditions of work or other statutory subjects. **Any group, including an employee representation committee, may meet the statutory definition of "labor organization" even if it lacks a formal structure, has no elected officers, constitution or bylaws, does not meet regularly, and does not require the payment or initiation of fees or dues.** Thus, a group may be an "employee representation committee" within the meaning of Section 2(5) even if there is no formal framework for conducting meetings among the represented employees (i.e., these employees whose conditions of employment are the subject of committee dealings) or for otherwise eliciting the employee's views.

309 N.L.R.B. 990 (1992) [1992 WL 386692, at *6], *aff'd.*, 35 F.3d 1148 (7th Cir.1994) (citations omitted).

■ Clearly then, in light of *Cabot Carbon* and *Electromation,* the pivotal questions involved in ascertaining whether an employee committee is a "labor organization" within the meaning of the NLRA are *not* whether, as plaintiff suggests, the Committee is international in scope, and whether it has adequate funding and a formal structure. Rather, in order to determine whether a committee is a "labor organization" under § 2(5), the relevant inquiries are whether: (1) employees participate in the Committee, (2) the Committee exists at least, in part, for the purpose of dealing with employers, and (3) these dealings concern "conditions of work" or other statutory subjects. *Electromation,* 309 N.L.R.B. 990. If these three conditions are satisfied, the employee committee is deemed a "labor organization" within § 2(5).

---

.8. Section 2(5) states, "When used in this Act—(5) The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which the employee's participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." In pertinent part, § 9(a)

states, "Representatives designated or selected for the purpose of collective bargaining by the majority of employees in a unit appropriate for such purposes, shall be the exclusive representatives of all employees in such unit for purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment ...''

Defendants have come forth with specific facts establishing that the Committee possesses of all three of the aforementioned characteristics. First, defendants have come forth with evidence showing that employees participate in the Committee. Gregory Wronkowicz, the Vice–President of Operations at Ajax, and Frank Buono, Executive Vice–President of Ajax and a member of the bargaining team for the Labor/Management Agreement at issue in this case, both aver in affidavits that: (1) the Committee is made up of representatives elected by the members of the bargaining unit at periodic elections conducted and supervised by the Committee, (2) the Committee solicited input from bargaining unit employees prior to and during collective bargaining negotiations, and (3) each collective bargaining agreement, including the one at issue here, was subject to a ratification vote by the employees of the bargaining unit. Furthermore, defendants have introduced evidence showing that the Committee exists at least, in part, for the purpose of dealing with employers concerning statutory subjects, such as grievances. In the affidavits of Buono and Vanderplancke, they aver that the Committee administers the grievance and arbitration procedures provided for in the Labor/Management Agreement on behalf of the bargaining unit employees.

Plaintiff has not come forward with any evidence refuting this evidence offered by the defendants. Indeed, plaintiff does not know how the Committee was selected and whether or not the Management/Labor Agreement was negotiated by the Committee or ratified by the employees.[9] Accordingly, given the state of the record, this court concludes that the Committee *is* a "labor organization" within the meaning of the NLRA.

■ Having concluded that the Committee is a "labor organization" under § 2(5), this court also finds that the Management/Labor Agreement is a contract between an employer (i.e, Ajax) and a labor organization (i.e., the Committee). Defendants offered uncontroverted evidence that the Committee,

through a set of formal negotiation sessions, bargained for and agreed upon all terms and conditions of employment set forth in the Management/Labor Agreement. *See e.g.,* Affidavit of Frank Buono, ¶ 5. Moreover, because Count I is "substantially dependent" upon that Agreement, this court finds that it is pre-empted by § 301.

### B. Count I Is Time–Barred

■ Having found Count I to be pre-empted by a § 301 claim, and as such, a § 301 claim, the next question is whether that claim is time-barred. In order to answer this question, this court has to determine the relevant statute of limitations.

Section 301 claims do not have an express statute of limitations. The Supreme Court has made clear, however, that at least with respect to hybrid § 301 claims,[10] the statute of limitations is six-months. *DelCostello v. Int'l. Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (adopting for hybrid § 301 claims, the statute of limitations applicable to unfair labor practice claims, which is prescribed at Section 10(b) of the NLRA, 29 U.S.C. § 160(b)). *See also Cummings v. John Morrell & Co.,* 36 F.3d 499 (6th Cir.1994) (six-month statute of limitations applied to hybrid § 301 suit against employer and union). With respect to non-hybrid § 301 claims, such as the § 301 claim in the instant case, the Supreme Court has provided no definitive statute of limitations and has instead, left it to the lower courts to determine the appropriate statute of limitations on a case-by-case basis.

In *Central States Southeast & Southwest Areas Pension Fund et al. v. Kraftco, Inc.,* 799 F.2d 1098 (6th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987), the Sixth Circuit refused to apply a six-month statute of limitations to a non-hybrid § 301 claim filed by a pension fund against an employer for failure to make payments required under its collective bargaining agreement. The court analogized the

---

**9.** Plaintiff was not an employee of Ajax at the time the Management/Labor Agreement was negotiated.

**10.** In a hybrid § 301 case, the plaintiff brings suit against both the union and the employer, alleging that the union breached its duty of fair representation and the employer breached the collective bargaining agreement.

§ 301 claim in that case to a breach of contract claim, and thus found suitable the six-year statute of limitations applicable in breach of contract actions. In finding the six-month statute of limitations unfitting, the Sixth Circuit stated that the § 301 claim in that case in no way could be construed as a hybrid § 301 claim against an employer and a union to which a six-month statute of limitations applied. The complaint only brought allegations against the employer, it did not allege any improper action (i.e., breach of the duty of fair representation) by the union or its members.[11] Also, the Sixth Circuit found that there was no need to apply a six-month statute of limitations in that case. The case did not involve day-to-day employment matters, which called for speed and finality. To the contrary, the case involved a pension plan dispute, analogous to an ERISA claim, which necessitated no quick resolution.

In *Woosley v. Avco*, 944 F.2d 313 (6th Cir.1991), by contrast, the Sixth circuit applied a six-month statute of limitations to a non-hybrid § 301 claim by employees against their employer. Distinguishing *Kraftco*, the Sixth Circuit held as follows:

> Rather than a pension dispute, which *Kraftco* involved, this case involves day-to-day employment and grievance issues.[12] *DelCostello* stressed the importance of rapid resolution when collective bargaining processes might be disturbed. The Seventh Circuit has noted that a difference exists in the importance of speed and finality in "day-to-day employment matters" as opposed to pension issues.

> *DelCostello* defined one of the underlying policies as the rapid resolution of collective bargaining disputes between the employer and employees. A six month statute of limitations should apply in this situation where the plaintiff claims are brought under the Agreement and involve the question of entitlement for employ-

ment under a collective bargaining agreement.

This court finds the case *sub judice* similar to *Woosley* and distinguishable from *Kraftco*. Therefore, this court finds a six-month statute of limitations appropriate here, as the court in *Woosley* so found. This court does not find a six-year statute of limitations applicable in the case at bar, as the court in *Kraftco* found proper.

A six-month statute of limitations is appropriate. Like *Woosley*, this case involves a mundane employment dispute under a collective bargaining agreement, namely the Management/Labor Agreement. Additionally, like *Woosley*, this case implicates the arbitration/grievance process.[13] *Woosley* recognized the importance of applying a six-month statute of limitations to cases involving disputes between an employer and an employee under a collective bargaining agreement. A six-month statute of limitations is also appropriate because plaintiff's claim resembles a hybrid breach of contract/breach of fair representation § 301 claim, to which the six-month statute of limitations most certainly applies. In this action, plaintiff charges his employer, Ajax, with breach of a "just cause" termination provision in the Management/Labor Agreement. Also, although he does not name the Committee (i.e., union) as a defendant in this action, plaintiff, in his brief in response to defendants' dispositive motion, nevertheless accuses the Committee (i.e., union) of not representing him fairly by blatantly refusing to process his grievance.

■ Having found the six-month statute of limitations to be applicable, the next question is whether plaintiff filed this case within the applicable period. This court finds that he did not. It is uncontroverted that at plaintiff filed his claim more than sixteen months after the events giving rise to it occurred (i.e., discharge), and thus ten months outside

---

11. The court recognized that the breach of the duty of fair representation "primarily has been associated with contract negotiation and the enforcement of that contract through grievance processing." *Id.* at 1106 (quoting *NLRB v. Local 299, Int'l, Brotherhood of Teamsters,* 782 F.2d 46, 50 (6th Cir.1986)).

12. The employees sought reinstatement and back-pay under Article X, Section 3 of the most recent collective bargaining agreement.

13. The Management/Labor Agreement expressly requires plaintiff to file a grievance concerning his discharge "within three (3) working days after occurrence of the circumstances giving rise to the grievance" or he forfeits his right to do so.

of the applicable statute of limitations. Since the claim is time-barred, this court will grant defendants summary judgment on it. *Cf. Brown v. Outboard Marine Corporation,* 1995 WL 795704 (E.D.Mich. July 12, 1995) (dismissing a time-barred claim under 12(b)(6)).[14]

### Count II

■ Count II of plaintiff's complaint alleges that Ajax and Poucket fired him in violation of express company policy and in particular, the following four-step Progressive Disciplinary Procedure:

1. First violation—Verbal Warning
2. Second violation—Written Warning
3. Third violation—Three (3) days to one (1) week suspension without pay—Management's discretion.
4. Fourth violation—Discharge.[15]

Defendants assert that they are entitled to summary judgment on Count II.

A preliminary question this court must answer with respect to Count II is whether that count is pre-empted by § 301. This court finds that it is pre-empted. Like Count I, Count II is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," and specifically, the Management/Labor Agreement. *Electrical Workers v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987). As stated *supra,* Count II charges defendants with violating the Progressive Disciplinary Procedure. This procedure is delineated in the Management/Labor Agreement.[16] *See* "Section 1" and "Section 2" of the Management/Labor Agreement.

Having found the claim pre-empted, the next question is whether it is time-barred.

This court finds that it is time-barred for the same reasons that Count I was time-barred.

### Count III

■ At Count III of his Complaint, plaintiff contends that defendant Poucket interfered with Goins' contractual relations by causing his termination at Ajax. Poucket urges this court to grant him summary judgment on this Count.

A preliminary question this court must answer with respect to Count III is whether it is pre-empted. This court is of the opinion that it is not. Unlike the other two counts, Count III does not involve the interpretation of *any* collective bargaining agreement. Count III is purely state-law claim. In fact, this does not even seem to be in dispute because neither party in their written submissions argues that Count III is pre-empted.

■ Since Count III is a state-law claim, the only jurisdiction this court can exercise over it is supplemental jurisdiction, and the decision whether to exercise such jurisdiction is one of discretion. 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In exercising its discretion, the court must look to "considerations of judicial economy, convenience and fairness to the litigants" and avoid needless decisions of state law. *Id.* at 726, 86 S.Ct. at 1139; *see also* C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* 3567.1 (2d ed.1984).

Recent litigation in the federal courts involving federal civil rights claims together with pendent state law claims has caused procedural and substantive problems. Although the federal and state claims in this action arise out of the same factual situation,

---

**14.** This court does not reach the other grounds defendants assert for dismissal of Count I, namely that plaintiff failed to exhaust his contractual remedies as provided for by the collective bargaining agreement.

**15.** The Progressive Disciplinary Procedure further provides, however, that "[c]ertain infractions or behavior are so severe and of such grave consequence as to warrant immediate termination of employment without disciplinary action that is progressive over time; other infractions may warrant acceleration of discipline beyond the first step of the Progressive Disciplinary Pro-

cedure upon the severity of the offense. In all cases, the matter will be thoroughly investigated and any extenuating conditions or mitigating circumstances considered."

**16.** Plaintiff argues that Count II is outside the purview of § 301 because the particular work rule upon which that Count is predicated is not contained in the Management/Labor Agreement. It is clear from defendants' submissions, that the work rule at issue was part of the Management/Labor Agreement, and thus plaintiff's argument is unavailing. *See* "Section 2" of the Management/Labor Agreement.

litigating these claims together may not serve judicial economy or trial convenience.

Because federal and state law each have a different focus, and because the two bodies of law have evolved at different times and in different legislative and judicial systems, in almost every case with pendent state claims, the courts and counsel are unduly preoccupied with substantive and procedural problems in reconciling the two bodies of law and providing a fair and meaningful proceeding. *See e.g. Padilla v. City of Saginaw,* 867 F.Supp. 1309 (E.D.Mich.1994) (holding that the standard for a § 1983 suit of false arrest was different from the standard for a state assault and battery claim which could result in immense jury confusion).

The attempt to reconcile these two distinct bodies of law often dominates and prolongs a pre-trial practice, complicates the trial, makes the jury instructions longer, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees. Thus, it appears that in many cases the apparent judicial economy and convenience of the parties' interest in the entertainment of pendent state claims may be offset by the problems they create.

For the foregoing reasons, this court, on its own motion, shall remand Count III of the complaint, which is predicated upon state law, to the Wayne County Circuit Court.

## ORDER

**IT IS HEREBY ORDERED** that AJAX METAL PROCESSING, INC. and KENNETH POUCKET's motion for dismissal, or in the alternative, for summary judgment is GRANTED IN PART. Summary judgment is GRANTED to defendants on Counts I and II of plaintiff's complaint pursuant to Federal Rule of Civil Procedure 56(c) and those Counts are **DISMISSED WITH PREJUDICE.** Summary judgment is DENIED to defendants on Count III of plaintiff's complaint and Count III is **REMANDED** to the Wayne County Circuit Court.

**SO ORDERED.**