## TUMBARELLA v THE KROGER COMPANY

Docket No. 77-4303. Submitted June 20, 1978, at Detroit.—Decided September 5, 1978.

Angeline Tumbarella was employed as a cashier by The Kroger Company for approximately seven years. On September 8, 1974, she was discharged from this position for allegedly stealing $5, although she vigorously denied taking any money and was never prosecuted for the alleged theft.

Angeline Tumbarella then commenced an action against The Kroger Company and Kenneth Koberstein and Paul Bregge,

REFERENCES FOR POINTS IN HEADNOTES

[1] 73 Am Jur 2d, Summary Judgment §§ 2, 4.

[2] 73 Am Jur 2d, Summary Judgment § 32.

[3] 32 Am Jur 2d, False Imprisonment § 1.

[4] 32 Am Jur 2d, False Imprisonment §§ 6, 97.

Necessity and sufficiency of allegations in complaint for malicious prosecution or tort action analogous thereto that defendant or defendants acted without probable cause. 14 ALR2d 264.

[5] 32 Am Jur 2d, False Imprisonment §§ 18, 74.

50 Am Jur 2d, Libel and Slander § 269.

Construction and effect, in false imprisonment action, of statute providing for detention of suspected shoplifters. 47 ALR3d 998.

Defamation: actionability of accusation or imputation of shoplifting. 29 ALR3d 961.

[6] 32 Am Jur 2d, False Imprisonment §§ 7, 74, 103–105, 114, 116.

50 Am Jur 2d, Libel and Slander §§ 352 *et seq.,* 358.

[7] 73 Am Jur 2d, Summary Judgment §§ 16–30.

[8] 73 Am Jur 2d, Summary Judgment §§ 4, 5, 26, 27, 36.

[9] 6 Am Jur 2d, Assault and Battery §§ 86, 169.

32 Am Jur 2d, False Imprisonment §§ 15, 16, 22, 74, 119.

[10] 50 Am Jur 2d, Libel and Slander § 1.

[11] 50 Am Jur 2d, Libel and Slander §§ 27–59.

[12] 50 Am Jur 2d, Libel and Slander §§ 195–198.

[13] 50 Am Jur 2d, Libel and Slander §§ 196–198, 200.

[14] 50 Am Jur 2d, Libel and Slander §§ 195, 198, 199.

[15] 50 Am Jur 2d, Libel and Slander §§ 114–116, 270, 271, 273–275, 322, 323.

[16] 50 Am Jur 2d, Libel and Slander §§ 169–173.

Liability of publisher of defamatory statement for its repetition or republication by others. 96 ALR2d 373.

severally and jointly, for damages for (1) false imprisonment, (2) slander, (3) libel, and (4) assault and battery. Summary judgment for defendants, Macomb Circuit Court, Howard R. Carroll, J. The plaintiff appeals claiming that the trial court erred in granting summary judgment on the false imprisonment, slander and libel counts. *Held:*

1. The trial court erred in granting summary judgment in respect to plaintiff's claim for false imprisonment because the plaintiff had stated a claim upon which relief could be granted and, as in almost all cases where questions of intent, credibility and state of mind are involved, there were disputes as to material facts.

2. Summary judgment on the plaintiff's slander claim was inappropriate because there was a material fact issue whether the store's security officers acted with malice or reckless disregard for the truth when they confronted plaintiff in the store and accused her of stealing.

3. Summary judgment on the plaintiff's libel claim was inappropriate because there is a genuine issue of material fact presented with respect to Kroger's liability for republication of an alleged defamatory letter which was sent to other Kroger stores.

Reversed and remanded for trial as to the false imprisonment, libel and slander counts.

1. JUDGMENT—SUMMARY JUDGMENT—COURT RULES—SUB-RULES.

The propriety of a trial court's grant of summary judgment should be scrutinized under two of the sub-rules of the court rule dealing with summary judgments where both the motion for summary judgment and the trial court's opinion fail to indicate the specific sub-rule relied upon and either of two of the sub-rules could apply (GCR 1963, 117.2(1), 117.2[3]).

2. JUDGMENT—SUMMARY JUDGMENT—FAILURE TO STATE A CLAIM— PLEADINGS—COURT RULES.

A motion for summary judgment based on a plaintiff's failure to state a claim upon which relief can be granted is to be considered by an examination of the pleadings alone; a reviewing court is to accept as true the well-pleaded facts in the plaintiff's complaint and to determine whether these claims are so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery (GCR 1963, 117.2[1]).

3. FALSE IMPRISONMENT—RESTRAINT OF PERSON'S LIBERTY—FALSE RESTRAINT.

False imprisonment is the unlawful restraint of a person's liberty

or freedom of movement; the restraint must be false, *i.e.*, without right or authority to do so.

4. FALSE IMPRISONMENT—MALICE—ABSENCE OF PROBABLE CAUSE—STATING A CAUSE OF ACTION.

A plaintiff in an action for false imprisonment need not allege malice or the absence of probable cause on behalf of a defendant in order to recover.

5. FALSE IMPRISONMENT—DEFAMATION—SHOPKEEPERS—STATUTES.

A shopkeeper does not enjoy an absolute privilege to detain or defame a person suspected of removing or attempting to remove from a store, without right or permission, goods held for sale therein (MCL 600.2917; MSA 27A.2917).

6. FALSE IMPRISONMENT—LIBEL AND SLANDER—SHOPKEEPERS—MENTAL ANGUISH—PUNITIVE DAMAGES—REASONABLE CAUSE.

A plaintiff is precluded from recovering damages for mental anguish and punitive damages in actions against a shopkeeper for false imprisonment, libel, and slander based on the shopkeeper's detention of the plaintiff where the merchant had reasonable cause to suspect the plaintiff of stealing.

7. JUDGMENT—SUMMARY JUDGMENT—GENUINE ISSUES OF FACT—AFFIDAVITS—PLEADINGS—DOCUMENTARY EVIDENCE—REASONABLE DOUBTS—FACTUAL SUPPORT.

Affidavits, pleadings, depositions, admissions and other documentary evidence must be considered by a court when considering a motion for summary judgment for failure to state a genuine issue of material fact, and the benefit of every reasonable doubt must be given to the party opposing the motion; this motion tests whether factual support exists for the claim made (GCR 1963, 117.2[3]).

8. JUDGMENT—SUMMARY JUDGMENT—GENUINE ISSUES OF FACT—COURT RULES.

Summary judgment based on failure to state a genuine issue of material fact is hardly ever appropriate in cases involving questions of intent, credibility or state of mind (GCR 1963, 117.2[3]).

9. FALSE IMPRISONMENT—RECOVERY OF CHATTELS—PRIVILEGE TO USE FORCE—ASSAULT AND BATTERY—DEFENSES.

The privilege to use force to retake chattels is a defense to an action for assault and battery; however, it is not a defense to a false imprisonment claim.

10. LIBEL AND SLANDER—HARM TO INDIVIDUAL'S REPUTATION—COMMUNICATIONS.

A communication is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter others from associating with him.

11. LIBEL AND SLANDER—SLANDER PER SE—ACCUSATION OF COMMISSION OF CRIME.

Accusation of commission of a crime is slander per se and is actionable even where a plaintiff suffers no special harm or loss of reputation.

12. LIBEL AND SLANDER—QUALIFIED PRIVILEGE—SUBJECT MATTER COMMUNICATED.

A qualified privilege to defame exists where the party communicating has an interest in the subject matter communicated or has a duty, in reference to the subject-matter communicated, to a person having a corresponding interest or duty.

13. LIBEL AND SLANDER—PRIVILEGE—UNDISPUTED CIRCUMSTANCES—QUESTION OF LAW.

The question, in an action for defamation, of whether or not a privilege attaches under undisputed circumstances is a question of law for the judge.

14. LIBEL AND SLANDER—QUALIFIED PRIVILEGE—ACTUAL MALICE—KNOWLEDGE OF FALSITY—RECKLESS DISREGARD FOR THE TRUTH.

A plaintiff in a defamation action where the defendant has a qualified privilege must prove actual malice in order to recover; *i.e.,* the plaintiff must prove that the communication was made with knowledge of its falsity or with reckless disregard for the truth.

15. LIBEL AND SLANDER—EMPLOYER—QUALIFIED PRIVILEGE—SUBJECT MATTER COMMUNICATED.

An employer has a qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject matter of the defamatory material, such as those employees responsible for hiring and firing.

16. LIBEL AND SLANDER—PUBLICATION OF DEFAMATORY STATEMENT—REPETITION OF DEFAMATORY STATEMENT.

One who publishes a defamatory statement is liable for the injurious consequences of its repetition where the repetition is the natural and probable result of the original publication.

*Armand D. Bove* (by *Ralph H. Nelson, Jr.*), for plaintiff.

*Hammond, Ziegelman, Sotiroff & Fishman* (by *Steven J. Fishman* and *Malcolm D. Brown*), for defendants.

Before: R. M. MAHER, P. J., and J. H. GILLIS and McGREGOR,* JJ.

J. H. GILLIS, J. Plaintiff was employed by defendant, Kroger Company, in the capacity of a cashier for approximately seven years. On September 8, 1974, plaintiff was discharged from her position for allegedly stealing $5.[1]

Plaintiff vigorously denied taking any money, and commenced an action against defendant for (1) false imprisonment, (2) slander, (3) libel, and (4) assault and battery. The action was removed to Federal Court on petition of defendants, but later remanded to Macomb County Circuit Court on June 19, 1976, on stipulation by the parties that there was no diversity or Federal question jurisdiction. Summary judgment was granted to defendants on October 13, 1977.

Plaintiff now appeals as of right from the dismissal of her complaint.[2]

The facts alleged by plaintiff leading to her discharge are as follows:

Plaintiff was operating her cash register in a normal fashion on September 8, 1974. Two very unusual transactions occurred near the end of her

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Plaintiff was never prosecuted for the alleged theft.

[2] Plaintiff does not question the validity of the trial court's ruling in respect to her assault and battery claim.

shift. First, a man ran through plaintiff's line, passing around the waiting customers, and tossed $2 on the counter. He was carrying a six-pack of beer, and he said, "This is for my beer". Plaintiff was not sure of the price of the beer so she put the $2 on her register slab and continued to ring up her remaining customers. Then, within a few minutes, a woman ran through plaintiff's line, carrying what appeared to be a roast. She tossed $5.10 on the counter and left. Plaintiff called for the woman to wait for her receipt but she was gone.

Plaintiff then put the $5.10 on her register slab near the $2 and finished ringing out her customers. Plaintiff then asked another cashier what the price of the beer was, and the other cashier answered $1.79. Plaintiff said that she might as well ring up the $1.79 and put the whole $2 in the register, and then proceeded to do so. Plaintiff then stood at her register trying to figure out what to do with the $5.10. She had no idea what the price of the meat had been, and was afraid it might have cost more than $5.10. Plaintiff decided to wait and ask the night manager what to do with the $5.10 at the end of her shift, when she "rang out" and turned in her key.

Plaintiff then closed her register and went into the store to do some personal shopping before ringing out for the evening.[3] Plaintiff carried the $5 with her while doing her shopping.[4] After completing her shopping, plaintiff proceeded to have another cashier ring up her items. While the cashier rang up the items, plaintiff went to her register, got her purse and extracted $4 to be used to pay for the items.

[3] Such action on plaintiff's part was not at all unusual in that cashiers often shopped in the store, especially right before leaving.

[4] Plaintiff explained that she did not want to leave the $5 on the register unattended.

At this point in time, two men approached plaintiff, identifying themselves as security and police officers, and asked plaintiff where the money was. After plaintiff indicated that she did not know what they were talking about, the two men escorted her to the back storeroom, and questioned her about the transaction. They also emptied plaintiff's purse and found the $5 bill.[5] The two men then took plaintiff to the front office for a conference with the night manager. After approximately 10 minutes, plaintiff was informed that she was fired.

Plaintiff subsequently contacted her union representative and filed a grievance alleging that she was improperly discharged. After meeting with Kroger's representatives, the union informed plaintiff that they did not intend to pursue her grievance any further.

Plaintiff then commenced the present action against defendants in Macomb County Circuit Court.

## I

Plaintiff first contends that the trial court erred in granting defendants' motion for summary judgment in respect to plaintiff's false imprisonment claim.

The basis for defendants' motion for summary judgment is not clear in that defendants failed to specify on the record what sub-rule they were grounding their motion upon. Apparently defendants' motion is based upon GCR 1963, 117.2(1), failure to state a claim upon which relief can be

---

[5] Plaintiff had put the $5 bill in her purse after being confronted by the security officers.

granted, or GCR 1963, 117.2(3), no genuine issue of material fact.

The trial court's opinion also failed to specify which sub-rule it was based upon. Under such circumstances, the propriety of summary judgment should be scrutinized under both sub-rules. See *Bob v Holmes,* 78 Mich App 205, 210; 259 NW2d 427 (1977).

The legal principles involved in reviewing a motion for summary judgment for failure to state a claim were set forth in *Borman's, Inc v Lake State Development Co,* 60 Mich App 175, 179; 230 NW2d 363 (1975):

"A motion based solely on subsection 1, challenges the legal sufficiency of a plaintiff's claim and is to be considered by an examination of the pleadings alone. * * * Our job as a reviewing court is to accept as true the well-pleaded facts in plaintiff's complaint, against each defendant, * * * and to determine whether these claims are so 'clearly unenforceable as a matter of law that no factual development can possible *[sic]* justify a right to recovery.' " (Citations omitted.)

False imprisonment is the unlawful restraint of a person's liberty or freedom of movement. *Stowers v Wolodzko,* 386 Mich 119; 191 NW2d 355 (1971). The restraint must be "false", *i.e.,* without right or authority to do so. *Hess v Wolverine Lake,* 32 Mich App 601, 604; 189 NW2d 42 (1971).

In *Hill v Taylor,* 50 Mich 549, 552; 15 NW 899 (1883), our Supreme Court stated the requirement of an arrest:

"There can be no such thing as an action for false imprisonment where the plaintiff has not been arrested; and while, as has been held, manual seizure is not necessary, there must be that or its equivalent in some sort of personal coercion."

This statement of the law was approved in *Bonkowski v Arlan's Department Store,* 383 Mich 90, 96–97; 174 NW2d 765 (1970), where the Court stated that the first element of false imprisonment was an intention to take the person accosted into custody.

In the case at bar there can be little question that plaintiff alleged this first element of a false imprisonment claim. Plaintiff clearly alleged that the two men who confronted her in the store stated that they were police and security officers and made menacing gestures which gave plaintiff the impression that she was in custody. These actions, coupled with threats of prosecution and jail, expressly and impliedly restricted plaintiff's freedom.

In an action for false imprisonment plaintiff need not allege malice or the absence of probable cause on behalf of the defendants in order to recover. Prosser, Torts (4th ed), § 12, p 49; 35 CJS, False Imprisonment, § 2, p 624. In *Donovan v Guy,* 347 Mich 457, 464; 80 NW2d 190 (1956), which concerned an action for false imprisonment, the Court quoted as follows from the early case of *Barker v Anderson,* 81 Mich 508, 511; 45 NW 1108 (1890):

" 'As a general proposition, it must be admitted that it is only necessary for the plaintiff, in an action of this kind, to show that he has been imprisoned or restrained of his liberty. The presumption then arises that he was unlawfully imprisoned, and it is for the person who has committed the trespass to show that it was legally justified.' "

Defendants contend that they had probable cause to believe that plaintiff had money that belonged to defendant, Kroger, in her possession.

Therefore, they claim that they had an absolute privilege, as a matter of law, to detain plaintiff. We disagree.

MCL 600.2917; MSA 27A.2917 provides that when a shopkeeper suspects a person of "removing or of attempting to remove from a store without right or permission goods held for sale therein", the shopkeeper does *not* enjoy the absolute privilege to detain or defame the person.

In actions for false imprisonment, libel, and slander, the person is merely precluded from recovering damages for mental anguish and punitive damages, where the merchant had reasonable cause to suspect the person of stealing. *Bruce v Meijers Supermarkets, Inc*, 34 Mich App 352, 357, fn 1; 191 NW2d 132 (1971), *Bonkowski v Arlan's Department Store*, 383 Mich 90, 96–97; 174 NW2d 765 (1970).

It is the opinion of this Court that the aforementioned statute should govern the present case in that the instant situation is practically indistinguishable from that involved in shoplifting cases. Accordingly, plaintiff should be permitted to proceed to trial on her false imprisonment claim and seek nominal damages even if defendants had probable cause to believe that plaintiff had stolen moneys from defendant, Kroger Company.

We also note that the trial court could not properly grant defendants' motion for summary judgment pursuant to GCR 1963, 117.2(3).

"Motions for summary judgment under GCR 1963, 117.2(3) are not proper unless no genuine issue as to any material fact remains. In passing on the motion, benefit of every reasonable doubt must be given to the party opposing the motion. Summary judgment under this provision is designed to test whether factual support exists for the claim made. Affidavits, pleadings,

depositions, admissions, and other documentary evidence must be considered by the court. Courts are liberal in finding that a genuine issue does exist, in order not to infringe upon a party's right to trial of disputed factual issues." (Citations omitted.) *Bob v Holmes, supra,* at 211–212.

In cases involving questions of intent, credibility, or state of mind, summary judgment is hardly ever appropriate. *Whalen v Bennett,* 67 Mich App 720, 725; 242 NW2d 502 (1976), *Brown v Pointer,* 390 Mich 346, 354; 212 NW2d 201 (1973).

Issues of credibility, intent and state of mind are present in the instant case. The question of probable cause on the part of the security officers in detaining plaintiff creates a genuine issue of material fact upon which reasonable minds could differ.

Defendants further claim that they were privileged to recapture their money in accordance with 1 Restatement Torts 2d, § 100, p 173. This section, by its own terms, is inapplicable to the case at bar. Section 100 deals with the privilege to use force to retake chattels and it is a defense to an assault and battery action. However, it is not a defense to a false imprisonment claim.

Defendants also argue that plaintiff's action is preempted by Federal labor policy. We disagree.

The improper conduct cited in plaintiff's complaint is not protected by the National Labor Relations Act. Also, the state has a substantial interest in protecting its citizens from the harm allegedly inflicted.

Finally, there is little risk that the current action will interfere with the effective administration of national labor policy.

Therefore, plaintiff's circuit court action is not barred by Federal labor policy.

Accordingly, we find that the trial court erred in

granting defendants' motion for summary judgment in respect to plaintiff's false imprisonment claim.

## II

Plaintiff next contends that the trial court improperly granted defendants' motion for summary judgment in regards to her slander claim.

A communication is defamatory if it tends to harm an individual's reputation so as to lower him in the estimation of the community or deter others from associating with him. *Iacco v Bohannon,* 70 Mich App 463; 245 NW2d 791 (1976). In the case at bar, the security guard's statement, "Where's the money", and the sequence of events which followed fit into the category of "dramatic pantomime", found to constitute publication in the *Bonkowski* case, *supra.* Accusation of commission of a crime is also slander per se, which is actionable even where the plaintiff suffered no special harm or loss of reputation.[6]

There exists a qualified privilege to defame where "the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty". *Bacon v Michigan Central R Co,* 66 Mich 166, 169–170; 33 NW 181 (1887), quoted in *Merritt v Detroit Memorial Hospital,* 81 Mich App 279, 285; 265 NW2d 124 (1978).

The question of whether or not a privilege attaches under undisputed circumstances is a question of law for the judge. *Lawrence v Fox,* 357 Mich 134, 139–140; 97 NW2d 719 (1959), *Tocco v*

---

[6] In the instant case, plaintiff did allege malice claiming that the incident which led to her discharge was prompted by her complaints to union and management concerning her seniority rights at defendant, Kroger Company.

*Piersante,* 69 Mich App 616, 628; 245 NW2d 356 (1976). Where a qualified privilege exists, plaintiff must prove actual malice in order to recover, *i.e.,* must prove that the communication was made with knowledge of its falsity or with reckless disregard for the truth. *Peisner v Detroit Free Press, Inc,* 82 Mich App 153; 266 NW2d 693 (1978), *Brunn v Weiss,* 32 Mich App 428, 431; 188 NW2d 904 (1971).

In the case at bar it is clear that the security officers had an interest in protecting the store from theft, and were the store's agents in this regard.[7] An employer has the qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject matter, such as those employees responsible for hiring and firing. See *Merritt v Detroit Memorial Hospital, supra.*

The next question that this Court must consider is whether or not the security officers acted with malice or reckless disregard for the truth. We must determine if the evidence produced before the lower court created a genuine issue of material fact in respect to this issue. The trial court, in granting defendants' motion for summary judgment, concluded that no genuine issue of material fact existed. The circumstances surrounding plaintiff's handling of the $5 at issue presented a factual question as to whether or not plaintiff did intend to steal the money.

If the security officers had plaintiff under surveillance during the entire transaction, then reasonable minds could differ as to whether or not a theft had occurred. Hence, the trial court could not properly conclude from the evidence presented

---

[7] See *Poledna v Bendix Aviation Corp,* 360 Mich 129; 103 NW2d 789 (1960).

that the security officers acted without malice or reckless disregard for the truth. Therefore, the trial court erroneously granted defendants' motion for summary judgment in respect to plaintiff's slander claim.

## III

Plaintiff's final allegation of error concerns the trial court's granting of defendants' motion for summary judgment dismissing plaintiff's libel claim.

Plaintiff contends and defendants concede that a letter was circulated which stated that plaintiff had been discharged for stealing from defendant, Kroger Company.[8] As noted earlier, it is actionable per se to accuse an individual of a crime involving theft.

Defendant, Kroger Company, contends that it was privileged to circulate the letter and inform other Kroger managers that plaintiff had been discharged for theft. We agree, since other Kroger managers had an interest in the subject matter, because they were responsible for hiring and firing employees, and Kroger might reasonably suspect that plaintiff would seek employment at another Kroger store in the area.

However, the privilege to inform other managers was only a qualified one, and Kroger could still be found liable if the communication was made with knowledge of its falsity or reckless disregard of the truth. See *Peisner v Detroit Free Press, supra.*

Here, again, a jury question was created, be-

---

[8] The letter was not produced at trial. However, an affidavit signed by a Kroger employee stated that she had read the letter and that she interpreted it to mean that plaintiff was discharged from her position for theft.

cause reasonable minds could differ as to whether, after hearing plaintiff's side of the story and refusing to prosecute her, defendant Kroger's communication that she had been stealing was malicious or in reckless disregard for the truth.

In addition, the qualified privilege did not extend to communications to employees in the other stores.[9] From plaintiff's testimony there is a reasonable inference that the privileged communication was republished by someone—the manager, the person who opened the letter or another person who saw the letter—indiscriminately to the other employees in the store.

The general rule is that one who publishes a defamatory statement is liable for the injurious consequences of its repetition where the repetition is the natural and probable result of the original publication.

In the case at bar the republication at other stores could be found by the trier of fact as a natural and probable consequence of Kroger's original publication of the letter. The letter was not marked confidential, and it contained the highly inflammatory communication that plaintiff had been caught stealing. Kroger should have expected republication, especially under these circumstances.

There is a genuine issue of material fact presented on the liability of Kroger for republication of the alleged defamatory letter. Hence, the trial court erred in granting defendants' motion for summary judgment in respect to plaintiff's libel claim.

[9] Plaintiff received phone calls from at least six different Kroger employees, all working at different locations, questioning her about her discharge for theft. These employees had no interest in the subject matter, and republication to them was not subject to any privilege.

Accordingly, the trial court's opinion is reversed and the case is remanded for trial on the false imprisonment, slander and libel charges.

Reversed and remanded. Costs to appellant.