*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

KYLE J. BOWLES, by Next Friend, BETHANNE
BOWLES, and BETHANNE BOWLES,

        Appellees/Cross-Appellants,

v

RENEE REPKIE,

        Appellant/Cross-Appellee.

UNPUBLISHED
April 18, 2025
9:37 AM

No. 365223
Huron Circuit Court
LC No. 20-105706-CZ

---

KYLE J. BOWLES, by Next Friend, BETHANNE
BOWLES, and BETHANNE BOWLES,

        Plaintiffs-Appellants/Cross-Appellees,

v

JUSTIN DUBS,

        Defendant-Appellee/Cross-Appellant.

No. 365375
Huron Circuit Court
LC No. 20-105679-CZ

---

Before: BORRELLO, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

      In Docket No. 365223, Renee Repkie appeals as of right a judgment entered after a jury trial. Kyle Bowles (Bowles) and her mother Bethanne Bowles (BB)[1] cross-appeal. In Docket No. 365375, Bowles and BB appeal as of right another judgment entered by the same judge on the

---

[1] Kyle Bowles reached the age of majority during the proceedings below. For ease of reference, we will generally use the name "Bowles" in referring to plaintiffs in this opinion, unless specific facts or arguments pertain solely to BB, who is Bowles's mother.

same day, and Justin Dubs cross-appeals. A single jury decided the various claims among the parties. We affirm.

## I. BASIC FACTS AND ARGUMENTS ON APPEAL

This case arose after Bowles alleged that Dubs, a teacher and coach at her high school, pulled her toward him when she and Dubs were alone in a gym and kissed her. Dubs denied this allegation but resigned his position with the Laker School District. Subsequently, Repkie, Dubs's girlfriend and also a coach at the school, made statements at a school board meeting that Bowles contended were defamatory toward her. The statements included that Dubs's accuser had a significant record of bullying, "had accused a fellow student of having sexual intercourse with her," needed mental-health treatment, and had made a false accusation against Dubs. Extremely contentious litigation followed. Dubs sued Bowles, alleging defamation and interference with a business relationship in connection with the kissing allegation, as well as abuse of process and malicious prosecution in connection with the filing of a police report and a petition for a personal-protection order (PPO). Bowles sued Dubs, alleging assault, as well as abuse of process in connection with Dubs's filing of his lawsuit. Bowles also sued Repkie, alleging defamation and "disclosure of embarrassing private facts" in connection with Repkie's statements at the school board meeting. Finally, Repkie sued Bowles, alleging that Bowles's lawsuit against her amounted to abuse of process and malicious prosecution.[2]

The jury concluded that Bowles and BB had defamed Dubs and that Repkie had defamed Bowles but rejected the additional claims. In accordance with the jury verdict, the trial court entered (1) judgment for Dubs in the amount of $254,200 against Bowles and $10,000 against BB, and (2) judgment for Bowles in the amount of $45,000.

On appeal, Repkie contends that the trial court should have dismissed Bowles's defamation claim against her in connection with a pretrial motion for summary disposition. Bowles contends that the trial court should have awarded her various attorney fees and costs and additionally contends that Dubs's defamation theory was legally deficient. Finally, Dubs contends that the trial court erred by denying his motion for additur or a new trial on damages.

## II. SUMMARY DISPOSITION

First, Repkie argues that the trial court should have granted her motion for summary disposition regarding Bowles's defamation claim against her. We disagree.

In *1373 Moulin, LLC v Wolf*, 341 Mich App 652, 663-664; 992 NW2d 314 (2020), this Court stated:

> A trial court's decision regarding a motion for summary disposition is . . . reviewed de novo. . . .

---

[2] Various other claims were dismissed before trial and are not at issue in these consolidated appeals.

-2-

A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [Quotation marks and citations omitted.][3]

"A communication is defamatory if, under all the circumstances, it tends to so harm the reputation of an individual that it lowers the individual's reputation in the community or deters others from associating or dealing with the individual." *Kefgen v Davidson*, 241 Mich App 611, 617; 617 NW2d 351 (2000). In general, a successful defamation claim requires that the plaintiff show:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod). [*Id*. (quotation marks and citations omitted).]

Repkie contends that the trial court should have granted her motion for summary disposition because her statements at the school board meeting were absolutely privileged and, alternatively, subject to qualified privilege.

"Communications deemed absolutely privileged are not actionable, even when spoken with malice." *Id*. at 618. "The doctrine of absolute privilege is narrow and applies only to communications regarding matters of public concern," and "absolute privilege has generally been applied to communications made during legislative and judicial proceedings and to communications by military and naval officers." *Id*.

In *Kefgen*, *id*. at 613-615, the plaintiff, a school-district superintendent, alleged that the defendants made false and defamatory statements about him during school board meetings in an effort to get him fired. The defendants argued that their statements were absolutely privileged. *Id*. at 615. This Court stated that absolute privilege can apply "to communications made by a public official in furtherance of an official duty during proceedings of . . . quasi-legislative bodies," and indicated that "[a] duly convened meeting of a school board may constitute a proceeding of a quasi-legislative body that allows for application of the absolute privilege doctrine." *Id*. at 618-619. The court concluded, however, that the circumstances under which the statements in *Kefgen* were made did "not support application of" absolute privilege. *Id*. at 619. It first noted that the *Kefgen* case was distinguishable from other Michigan cases wherein absolute privilege was applied because the statements in *Kefgen* were made by private citizens "as opposed to public officials in the course of their official duties." *Id*. at 619-620. The court did note that in an Illinois case, absolute privilege had been applied to statements made by a private citizen during legislative proceedings.

---

[3] Although Repkie filed her motion under MCR 2.116(C)(8) and (10), the trial court decided the motion under MCR 2.116(C)(10) because documentary evidence was at issue.

*Id*. at 620. But, it found that case to be inapposite because the communications in *Kefgen* were not "made in resolution of a matter of public concern." *Id*. *Kefgen* then set forth other cases wherein absolute privilege applied because statements were made regarding pending official matters. *Id*. at 620-621.

The defendants in *Kefgen* argued that the statements at issue "concerned the school board's decision to construct new administrative facilities" and were, therefore, absolutely privileged. *Id*. at 620. This Court disagreed:

> While defendants' communications were motivated by plaintiff's perceived involvement in the school board's decision to construct the administrative facility, *they were not made during the resolution of the matter*. Instead, each of the communications was made to individuals present at meetings after the school board's vote to construct the new administrative facility.
>
> We refuse to extend the doctrine of absolute privilege to protect speech unrelated to an ongoing public matter simply because it was made in the confines of a legislative or quasi-legislative meeting. The absolute privilege has been applied to allow public officials to speak freely in the course of their official duties without fear of legal repercussions. The same rationale does not apply to this case where defendants are alleged to have made statements to citizens in attendance at school board meetings regarding plaintiff's prior job experiences and perceived involvement in the school board's decision-making process. *The communications at issue were made at defendants' own discretion and initiative, not in connection with a subpoena to appear at the meeting or in response to specific questions by public officials*. Just as a public official's attendance at a duly convened legislative or quasi-legislative proceeding does not afford him an invitation to undertake a slanderous campaign against whomever he pleases, concerning whatever he pleases, private citizens are not absolutely privileged to engage in unfettered speech simply because the statements are made during a legislative or quasi-legislative proceeding. [*Id*. at 621-622 (emphasis added; citations omitted).]

The reasoning in *Kefgen* applies with equal force to the instant matter. Repkie was a private citizen, and Dubs already had resigned, with finality, at the time of the school board meeting. Repkie made her statements on the basis of her own discretion and at her own initiative, and the statements were not aimed at resolving a pending official matter. In other words, because Dubs had already resigned, Repkie's statements involved a matter "already resolved" and thus were not protected by absolute privilege. See *id*. at 623. Therefore, the trial court did not err by concluding that absolute privilege did not apply.

Regarding qualified privilege, this Court in *Smith v Fergen*, 181 Mich App 594, 596-597; 450 NW2d 3 (1989),[4] stated:

The elements of qualified privilege are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only. An employer has the qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the same subject matter. A plaintiff may overcome a qualified privilege only by showing that the statement was uttered with actual malice, i.e., with knowledge of its falsity or reckless disregard of the truth. The issue of actual malice is generally one of fact for the jury and for which supporting facts must be given; general allegations of malice are insufficient to establish a genuine issue of material fact. [Citations omitted.]

In *Tumbarella v Kroger Co*, 85 Mich App 482, 493; 271 NW2d 284 (1978), we explained that "[t]here exists a qualified privilege to defame where the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty." (Quotation marks and citations omitted.) For example, we noted that "[a]n employer has the qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject matter, such as those employees responsible for hiring and firing." *Id*. at 494.

The trial court in the case before us concluded that qualified privilege did not apply as such a privilege requires disclosure in a proper manner and to proper parties only, and Repkie made her statements at a meeting open to the public. This analysis is sound. The present case is not analogous to a situation wherein an employer had a duty to communicate information for the purpose of possibly firing an employee who had allegedly committed theft. See *id*. at 486-488, 494. See also *Everest v McKenny*, 195 Mich 649, 649-651, 659; 162 NW 277 (1917) (concluding that the defendant, a college president, had a duty to warn a boarding house that housed students about a "crazy" person and had a qualified privilege to do it). Again, here, Dubs already had resigned at the time of the school board meeting. The resignation was not revocable. Further, even if it could be said that the school board somehow retained an interest in the Bowles-Dubs matter, Repkie made the statements at a meeting open to the public. Thus, the statements at issue were not "limited in scope" to warrant application of qualified privilege as a matter of law. See *Smith*, 181 Mich App at 596-597.

Repkie next contends that no defamation was apparent because, in her statements at the school board meeting, she did not mention Bowles's name. But Bowles, at her deposition, said that school board members were informed about the allegation by September 6, 2019, i.e., before the meeting at issue. Bowles also testified that she had some sense of relief after disclosing what had happened but was fearful because Dubs's "family is intertwined throughout the school" and "the community supports the Dubs family." She said that she knew it "would be a big deal" "in

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

[their] small town." Additionally, the superintendent stated that a demonstration to show support for Dubs had been planned in advance of the school board meeting. It is clear from his communications that people knew who had made the accusations.

Ultimately, the trial court did not err by finding that a genuine issue of material fact existed for trial. Bowles presented adequate evidence of the elements of defamation. Repkie continually refers to trial testimony in support of her assertion that her statements were substantially true,[5] but the question before the trial court, and before us, is whether Bowles presented enough evidence to raise a question of fact at the summary disposition stage. We find that she did.

Accordingly, no error is apparent concerning the trial court's decision to deny summary disposition with regard to Bowles's defamation claim against Repkie.[6]

### III. ATTORNEY FEES AND COSTS—BOWLES AND REPKIE

Bowles contends that Repkie acted with actual malice in this matter, that Repkie's claims against her were frivolous, and that Bowles is entitled to attorney fees, prejudgment interest, and various fees and costs.

A trial court's finding regarding an allegation of frivolousness is reviewed for clear error. *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). "A decision is clearly erroneous if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

A decision regarding whether to tax costs is reviewed for an abuse of discretion, as is a decision regarding whether to award attorney fees. *Ayotte v Dep't of Health & Human Servs*, 337 Mich App 29, 38; 972 NW2d 282 (2021); *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Van Elslander*, 297 Mich App at 211 (quotation marks and citations omitted).

Bowles contends that the trial court should have awarded her attorney fees because she prevailed in her lawsuit against Repkie.

MCL 600.2911(7) states:

> An action for libel or slander shall not be brought based upon a communication involving a private individual unless the defamatory falsehood concerns the private individual and was published negligently. Recovery under this provision shall be limited to economic damages including attorney fees.

---

[5] "Truth is an absolute defense to a defamation claim." *TM v MZ*, 326 Mich App 227, 242; 926 NW2d 900 (2018) (quotation marks and citation omitted).

[6] We deny Bowles's request for appellate sanctions against Repkie under MCR 7.216(C).

The statute indicates that recovery is "limited" to economic damages including attorney fees. It does not state that, if a plaintiff prevails, attorney fees must be awarded. Here, the jury concluded that Repkie's oral and written statements at the school board meeting were defamatory. It awarded $20,000 in damages to Bowles for "[h]arm to community standing and reputation" and $20,000 for "[h]arm to personal reputation." It explicitly awarded $0 for attorney fees. It also awarded $5,000 for noneconomic damages such as stress. The jury concluded that Repkie made the statements complained of "with bad faith or ill will." But, after reaching this latter conclusion, it answered "[n]o" when asked the following question: "Did Kyle Bowles incur some incremental or increased injury to her feelings, such as humiliation, a sense of outrage, indignity, stress, anxiety, loss of affection of sports and/or education, that was not compensated for in your award of actual damages?" Because it answered "[n]o" to this question, it did not move on to an award of exemplary damages.

MCR 2.515 states:

> **(A) Use of Special Verdicts; Form.** The court may require the jury to return a special verdict in the form of a written finding on each issue of fact, rather than a general verdict. If a special verdict is required, the court shall, in advance of argument and in the absence of the jury, advise the attorneys of this fact and, on the record or in writing, settle the form of the verdict. The court may submit to the jury:

> (1) written questions that may be answered categorically and briefly;

> (2) written forms of the several special findings that might properly be made under the pleadings and evidence; or

> (3) the issues by another method, and require the written findings it deems most appropriate.

> The court shall give to the jury the necessary explanation and instruction concerning the matter submitted to enable the jury to make its findings on each issue.

> **(B) Judgment.** *After a special verdict is returned, the court shall enter judgment in accordance with the jury's findings.*

> **(C) Failure to Submit Question; Waiver; Findings by Court.** If the court omits from the special verdict form an issue of fact raised by the pleadings or the evidence, a party waives the right to a trial by jury of the issue omitted unless the party demands its submission to the jury before it retires for deliberations. The court may make a finding with respect to an issue omitted without a demand. If the court fails to do so, it is deemed to have made a finding in accord with the judgment on the special verdict. [Emphasis added.]

The trial court did not err by adhering to the jury's precise finding regarding attorney fees and other damages, as MCR 2.515(B) required it to do so.

Bowles next contends that attorney fees were warranted on the basis of frivolousness. MCL 600.2591 states:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

As noted, the jury concluded that Repkie made the statements complained of "with bad faith or ill will." The jury did not find for Repkie on her claims of abuse of process and malicious prosecution. Bowles seems to be arguing that sanctions were warranted, therefore, because this "proves" that Repkie's counterclaims for abuse of process and malicious prosecution were frivolous. But, merely because the jury concluded that Repkie defamed Bowles with bad faith or ill will and additionally concluded that Repkie's claims against Bowles for abuse of process and malicious prosecution were unfounded does not mean that Repkie's claims were frivolous.

As stated in *Jericho Constr, Inc v Quadrants, Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003), a "plaintiff's inability to prove its case by a preponderance of evidence at trial does not merit a finding that its claim was frivolous." See also *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002) ("The mere fact that plaintiffs did not ultimately prevail does not render the supplemental complaint frivolous."). Bowles contends, by way of her question presented for appeal, that the jury made a specific finding of frivolousness, but this is a mischaracterization. The jury found that Repkie's statements at the meeting were made with bad faith or ill will; it did not make a finding that the claims of abuse of process and malicious prosecution by Repkie were frivolous. In concluding that Repkie's claims had not been frivolous, the trial court ruled:

And frankly speaking, with all the facts in this case, the—from the start of it, through the end of the school board meeting, moving onward, this case was an absolute—I wouldn't say mess, it was a zoo. It was everything pointing here and

everything pointing there, and—and for me to look at all of this and say, well you know what, because the jury said unilaterally, hey, Ms. Repkie, you don't have a claim . . . I can't say it's frivolous. I don't find it's frivolous. These were multiple actions, involving multiple parties, involving multiple behaviors, which resulted in this action being filed.

This finding was not clearly erroneous.

Bowles contends that the trial court should have granted her various costs. In discussing the parties' various requests for costs, the trial court stated that an award of costs was completely within the court's discretion. It said:

[B]ecause it is discretionary and I think we've fought this long enough, I'm not taxing costs, period. Across the board, plaintiff, defendant, counter-defendant, counter-plaintiff, we're done. No taxation of cost[s].

MCR 2.625(A)(1) states that "[c]osts will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." Below, Bowles admitted that a trial court has broad discretion regarding whether to award costs. In *Blue Cross & Blue Shield of Mich v Eaton Rapids Community Hosp*, 221 Mich App 301, 308; 561 NW2d 488 (1997), this Court stated, "Taxation of costs under MCR 2.625(A) is within the discretion of the trial court. A trial court is not required to justify awarding costs to a prevailing party; rather, the court must justify the failure to award costs." (Citation omitted.)

Here, the trial court, in essence, explained that the litigation had been extensive and contentious from all sides, and it decided that costs would not be awarded in either lower court docket number. It "balanced things out" and decided that no prevailing party would obtain costs. Given these facts, as well as the fact that there was no singular successful party at trial, this was not an abuse of discretion.[7]

---

[7] Bowles argues about prejudgment interest. It is mandatory according to statute. See *Alpine Constr Co v Gilliland Constr Co*, 50 Mich App 568, 574; 213 NW2d 824 (1973), and MCL 600.6013. "A prevailing party is entitled to the statutory interest on his money judgment even though the order of judgment did not expressly provide for interest." *Dep't of Treasury v Central Wayne Co Sanitation Auth*, 186 Mich App 58, 64; 463 NW2d 120 (1990). We remind the trial court of this because the court stated that it was not going to award prejudgment interest. Bowles makes an argument about sanctions imposed against her counsel for a mistrial that occurred. This argument has not been properly presented for review and need not be addressed by this Court because it was not set forth in the statement of questions presented for appeal. *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2012). At any rate, the factual circumstances indicate that the trial court did not err by concluding that Bowles's attorney violated MRE 408 and caused a mistrial. Bowles appears to be arguing that sanctions were unwarranted because Dubs's attorney made inappropriate statements at the second trial. But, there was no mistrial during the second

IV. BOWLES'S ARGUMENTS IN RELATION TO THE JUDGMENT FOR DUBS

Bowles takes issue with the attorney fees awarded to Dubs in connection with his successful defamation claim. However, as part of the "actual damages" section of the special verdict form, the jury assessed $125,000 for attorney fees in connection with Dubs's claim. Again, MCR 2.515(B) states that "[a]fter a special verdict is returned, the court shall enter judgment in accordance with the jury's findings." The trial court properly entered judgment in accordance with the findings.

Bowles argues that various costs should not be assessed in favor of Dubs, but the trial court did not tax costs for or against anyone.[8] As noted in Part III of this opinion, the trial court did not abuse its discretion in making its decision regarding costs.

Bowles appears to be contending that she should be awarded attorney fees in connection with the claims of abuse of process and malicious prosecution brought by Dubs because the jury did not find for Dubs on those counts and they were, therefore, frivolous. But she did not argue frivolousness below. In *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-294; 14 NW3d 472 (2023), we clarified that, as our Supreme Court has held, unpreserved issues in civil cases are waived. At any rate, a "plaintiff's inability to prove its case by a preponderance of evidence at trial does not merit a finding that its claim was frivolous." *Jericho Constr, Inc*, 257 Mich App at 36.

Bowles also contends that Dubs could not recover for defamation per se as a matter of law because this tort requires that the defamatory statement in question involve an accusation of a serious crime, and at the time of trial, Bowles was no longer accusing Dubs of criminal sexual conduct but instead was accusing him of simple assault. See generally, *Lakin v Rund*, 318 Mich App 127; 896 NW2d 76 (2016). This argument also is waived. See *Tolas Oil*, 347 Mich App at 289-294. In any event, it is without merit.

---

trial, and the purpose of the assessed sanctions was to compensate for time that was wasted in connection with the second trial itself. No error is apparent.

[8] Bowles continues to argue that attorney fees and costs should have been assessed against Repkie. That argument is addressed in Part III of this opinion. She also contends that costs against BB were not allowable because MCL 600.2415 states:

> Any person who brings an action as next of friend for an infant, or a person who is insane or otherwise mentally incompetent, shall be responsible for the costs of the suit. However, no person who defends a suit as guardian ad litem of an infant or otherwise incompetent person shall be responsible for the costs of the suit unless specifically charged by the court for some personal misconduct in the case.

But again, the trial court did not tax costs against anyone, including BB.

Dubs alleged that Bowles falsely accused him of inappropriately touching and kissing her. Defamation per se can result from accusing someone of a crime involving "moral turpitude." See *Lakin*, 318 Mich App at 134. Moral turpitude can involve contravening accepted moral codes and ethics. *Id*. at 139. Clearly, a teacher inappropriately touching and kissing a 16-year-old student would meet such a definition, and Dubs attached to his complaint an allegation by BB that he had assaulted Bowles, i.e., committed a crime against her. This case is unlike *Lakin*, wherein this Court concluded that an accusation of a simple assault involving putting a finger on a person's chest was not an accusation to support defamation per se. See *id*. at 130. In other words, the crime in the present case, when viewed in light of the underlying facts, involved "moral turpitude." Thus, Dubs's allegation of defamation per se was legally adequate. In addition, a review of the verdict forms shows that the jury's findings regarding defamation per se were essentially equivalent to potential findings regarding common-law defamation.[9] Therefore, reversal is unwarranted.[10]

## V. ADDITUR

Dubs contends that the trial court should have granted additur or a new trial on damages because the jury awarded him $0 for "online reputation repair" despite the fact that he provided testimony about such repair from an expert witness.

"This Court reviews a trial court's decision on a motion for additur or a new trial for abuse of discretion." *Taylor v Kent Radiology*, 286 Mich App 490, 524; 780 NW2d 900 (2009).

MCR 2.611 states, in part:

**(E) Remittitur and Additur.**

(1) If the court finds that the only error in the trial is the inadequacy or excessiveness of the verdict, it may deny a motion for new trial on condition that

---

[9] The jury did not fill out the verdict form for common-law defamation because it was instructed not to do so if it found defamation per se.

[10] Bowles cites MCL 600.2911(2)(b), which states:

Exemplary and punitive damages shall not be recovered in actions for libel unless the plaintiff, before instituting his or her action, gives notice to the defendant to publish a retraction and allows a reasonable time to do so, and proof of the publication or correction shall be admissible in evidence under a denial on the question of the good faith of the defendant, and in mitigation and reduction of exemplary or punitive damages.

She makes a very brief and unsupported statement that no evidence of any retraction proceedings was admitted. But, the jury concluded that Bowles did not make the statement about the kissing incident "with bad faith or ill will" and did not, therefore, move forward to even assess any exemplary damages.

within 14 days the nonmoving party consent in writing to the entry of judgment in an amount found by the court to be the lowest (if the verdict was inadequate) or highest (if the verdict was excessive) amount the evidence will support.

(2) If the moving party appeals, the agreement in no way prejudices the nonmoving party's argument on appeal that the original verdict was correct. If the nonmoving party prevails, the original verdict may be reinstated by the appellate court.

In *Taylor*, 286 Mich App at 525, this Court, discussing possible additur, stated:

Whether a jury's verdict is clearly or grossly inadequate or against the great weight of the evidence necessarily depends on the nature of the evidence adduced at trial. This is because the plaintiff has the burden to prove each element of his or her case, and damages such as medical expenses are distinct from damages for things such as pain and suffering. Further, this Court will defer to the judgment of the jury on the weight to be accorded the evidence concerning damages: In short, the jury is free to credit or discredit any testimony. It may evaluate the evidence on pain and suffering differently from the proof of other damages. No legal principle requires the jury to award one item of damages merely because it has awarded another item. [Quotation marks and citations omitted.]

We stated that the plaintiffs in *Taylor* had "not identified any evidence that the jury's decision to award only economic damages was motivated by passion or prejudice." *Id*. It said, "Rather, plaintiffs argue that the jury's decision not to award noneconomic damages is inconsistent with its decision to award economic damages and is against the great weight of the evidence of noneconomic damages presented at trial." *Id*. at 525-526. This Court concluded that the lower court did not err by denying additur, stating, "Although the testimony and evidence could have supported some measure of noneconomic damages, a reasonable jury could also have concluded that plaintiffs failed to meet their burden of proof." *Id*. at 526. This Court cited *Taylor v Mobley*, 279 Mich App 309, 314-315; 760 NW2d 234 (2008), for the proposition that a jury is allowed to disbelieve testimony. *Taylor*, 286 Mich App at 527.

Here, the deposition of Nicholas Carroll was presented to the jury. He stated that legal action likely would be needed to remove stories about Dubs from various news sites. He opined that it would take $200,000 to $300,000 to repair Dubs's "online reputation." But, he stated at his January 20, 2022 deposition that the last online document mentioning Dubs appeared to have been from August 2020. This suggests that, at least at the time of his deposition, the publicity issues surrounding Bowles's allegations had substantially diminished with the passage of time.

Dubs contends that additur or a new trial on damages was warranted because Carroll's testimony was unrebutted. He cites *Burtka v Allied Integrated Diagnostic Servs, Inc*, 175 Mich App 777, 780; 438 NW2d 342 (1989), wherein this Court stated, "It is well settled that where a jury verdict ignores 'uncontroverted' damages of the plaintiff, the verdict is inadequate and must be reversed." (Citations omitted.) Here, the trial court, in deciding Dubs's motion, noted that the jury specifically had been instructed that it was free to accept or not accept testimony provided by experts. The trial court stated that the jury had taken a long time to deliberate and clearly

-12-

considered whether to accept the testimony because it answered a question on the special verdict form pertaining to online reputation repair. The trial court said that this was not a "willy-nilly type of verdict" and that, instead, the jurors simply "didn't buy" the testimony about online reputation repair. The trial court then denied Dubs's motion, stating that the verdict was not inadequate "in any way, shape, or form."

The trial court's decision on the request for additur was not an abuse of discretion. Bowles's attorney cross-examined Carroll during his deposition and did not simply accept the testimony at face value. In addition, the jurors were free to disbelieve Carroll. *Taylor*, 286 Mich App at 527. Perhaps and possibly most importantly, the jurors knew that they were finding in Dubs's favor on the defamation claim, and they may have inferred that this finding would make its way online. Finally, there is no evidence that the jury's verdict on the additur issue was motivated by passion or prejudice. *Id.* at 525.

## VI. CONCLUSION

There were no errors warranting relief. Accordingly, we affirm.

/s/ Stephen L. Borrello
/s/ Michael J. Riordan
/s/ Sima G. Patel